OPINION OF THE COURT
Morrie Slifkin, J.
In this action for divorce, the principal issue concerns distribution of marital property. At trial, the court granted plaintiff husband’s motion for divorce, his testimony in support thereof being uncontroverted. Defendant wife has waived any claim to maintenance.
The parties were married in 1970 when plaintiff was 24 years of age and defendant was 23 years of age. There are no children of the marriage. At that time, as now, plaintiff was employed by a major oil corporation as a seaman, which necessitated his being away from home for approximately six months each year. Until shortly after the parties separated, defendant was working as a secretary in the mortgage department of a bank. At the time of marriage, plaintiff was earning approximately $16,000 annually and defendant was earning $6,000. In 1979, plaintiff’s income *403 was approximately $36,500, while that of defendant was just under $14,000. During the intervening years, plaintiff’s salary averaged 2.5 times that of defendant.
Based on the testimony elicited at trial, the court finds that their contributions to the household were in proportion to their incomes. The court rejects plaintiff’s contention, unsupported by the record, that defendant’s income was disposed of by her on personal items or otherwise, from which he received no benefit, direct or indirect.
The major asset acquired during the marriage was the marital premises, bought in 1975 at a purchase price of $50,000, and now appraised at $85,000. Of the $20,000 down payment, plaintiff contributed $15,000 and defendant contributed $5,000. Plaintiff’s contention that defendant’s contribution included money converted from his paychecks in the amount of $2,450 was established by the evidence and not successfully rebutted. The present balance owing on the original $30,000 mortgage is $26,740.62, leaving a net present value of the house at $58,259.38.
Plaintiff has a profit-sharing savings plan with his employer, known as a thrift fund, from which he can presently withdraw $32,578.06. This fund represents savings from plaintiff’s salary.
Plaintiff is the record owner of a 1979 automobile, presently valued at $3,500, which was won in a church raffle. The raffle ticket had been issued to the wife, who does not drive.
The final asset of note consists of the household furnishings. Both parties participated in the purchase of household furnishings. These purchases were for the home of the parties and for their joint use, although the primary mechanics of the purchase were the checks issued by plaintiff totaling some $44,000. No appraisal was ever made of these individual items. Although defendant claimed at trial that the purchases of these items represented a joint investment for their future, her affidavit of net worth shows household furnishings valued at $10,000 with her share at $2,000.
Section 236 (part B, subd 5, par d) of the Domestic Relations Law enumerates the 10 considerations for the *404 court’s determination. The court herein will deal with them seriatim as they relate to the facts of this case.
(1) The income and property of the parties at the crucial times have been previously detailed in discussion of the facts of the case. Both parties are sufficiently capable of supporting themselves.
(2) The marriage lasted approximately 10 years. However, there was evidence that defendant confessed to plaintiff of her infidelities as early as 1975. The health of either party was not put in issue and it is assumed that both are normally healthy people. Certainly, no potential disabilities were disclosed at trial.
(3) There are no children and thus there is no necessity with respect to occupying the marital premises. However, plaintiff has expressed a desire to remain in possession of the house, whereas defendant has no desire therefor.
(4) Although each party does lose the right to inherit from the other, there appears to be no separate property (see Domestic Relations Law, § 236, part B, subd 1, par d) that would make such a loss presently meaningful. The nature of plaintiff’s pension plan, which essentially consists of a present right to withdraw savings, has been discussed. Anything other than the savings amount is noncontributory and there is no present right thereto; the same facts apply to the wife’s pension plan.
(5) As previously noted, defendant waived any claim to maintenance. Plaintiff has made no claim therefor.
(6) There is no equitable claim to any of the acquisition of marital property by the party not having title, except with respect to the afore-mentioned automobile.
(7) The liquidity of the marital property depends upon which property is being discussed. No doubt the house and automobile can be sold readily at or near the values assigned to them herein. The thrift fund is cash. However, the household furnishings were not the subject of any testimony establishing their present value or saleability.
(8) It appears that there will be no abrupt change in the financial circumstances of the parties, barring unforeseen circumstances. Each is capable of earning what he/she *405 earned during marriage, with proportionate increments for inflationary adjustments and experience raises. There was no evidence to show that either was desirous or capable of earning a great deal more or that either was likely to inherit a substantial amount of money.
(9) There are no business, corporate or professional assets to be distributed.
(10) The 10th consideration is “any other factor which the court shall expressly find to be just and proper.” It is this “wild card” consideration which the court finds most determinative of the particular case before it, as will subsequently be discussed.
The testimony at the trial established that the parties treated their marriage as an economic partnership albeit an unequal one. As previously noted, apart from the contribution to the down payment for the house, each contributed to the household in relation to his/her income. Neither party expended any more time, effort or other nonmonetary contribution to the marriage than did the other. There were no children demanding the constant attention of a parent. Neither party, for the sake of the marriage and family, sacrificed his or her ability to seek a remunerative career. There is not a scintilla of evidence to suggest that either party would have earned more money had he or she not been married.
At the termination of this marriage, as the other discussed factors show, neither party’s ability to earn a living has been impaired. They have both proceeded in their chosen careers in exactly the same manner as if they were not married. In sum, neither party’s future financial condition has been affected as a consequence of this marriage.
Therefore, the court’s primary obligation in distributing the marital property of this particular marriage is to ensure that neither party secures a monetary advantage merely by virtue of having been married to the other. Inasmuch as there are no children to care for, both parties are healthy, each party is capable of self-support, there is no impediment to each remarrying if the choice is made, and the 10 years of marriage still leave the parties relatively young, it would be inequitable to distribute property *406 based on factors other than relative economic contribution. This is the rare case where the only relevant consideration is the economic aspects of the marriage (cf. Rothman v Rothman, 65 NJ 219).
The parties held the marital premises as tenants by the entirety. Does such holding automatically require equal division or is the property nevertheless distributable equitably in accordance with the principles of part B of section 236 of the Domestic Relations Law? A fine reading of that statute might indicate that the court has no discretion, since clause (6) of paragraph d of subdivision 5 allows the court to consider an equitable claim, interest in, or contribution to property “by the party not having title”. Consequently, it can be argued, as does defense counsel in rephrasing the court’s rhetorical question posed during trial, that by dealing specifically with property not held jointly, the Legislature meant to eliminate jointly held property from the court’s consideration. This court cannot accept that argument.
The 10th consideration allows for any other factor that the court shall expressly find to be just and proper. This alone confers the necessary authority for equitably dividing the realty. In light of the intention of the Legislature in enacting the equitable distribution law, the failure to expressly include jointly owned realty as an item which may be equitably distributed must be deemed an oversight. For otherwise, the very intention of the Legislature could be subverted. Very often the house is the major asset in the marriage. Inability to make adjustments in the distribution of the real property or proceeds thereof could, in a large number of cases, result in inability to make equitable distribution overall. Clearly, this was not the intent of the Legislature. Equitable distribution of the jointly held marital residence has been found proper under the analogous statutes of our sister States (Sanders v Sanders, 118 NJ Super 327, which divested a spouse of all interest in the realty; Olen v Melia, 141 NJ Super 111; Canova v Canova, 146 NJ Super 58; Gemignani v Gemignani, 146 NJ Super 278).
Since plaintiff has expressed a strong desire to remain in possession of the marital home and since defendant has no *407 such desire, there is no reason why plaintiff should not be allowed to retain sole ownership by paying to defendant her distributive share thereof. The court computes defendant’s distributive share as follows:
Present market value of house $85,000.00
Less outstanding mortgage debt 26.740.62_
Present net value $58,259.38
Less down payment 20.000.00
$38,259.38
Amount of down payment attributed to defendant $ 2,550.00
+ .28 ($38,259.38) 10.712.63
TOTAL $13,262.63
Less defendant’s .28 share of outstanding balance on home improvement loan 278.92
$12,983.71
The .28 multiplier represents the court’s determination as previously found, that plaintiff and defendant contributed to the expenses of the marriage in a 2V6 to 1 ratio.
Therefore, within 60 days after entry of judgment hereon, plaintiff shall tender to defendant’s attorney the sum of $12,983.71 representing defendant’s distributive share of the house. Defendant shall simultaneously therewith deliver all documents necessary for transfer of sole ownership to plaintiff.
Defendant is entitled to 28% of the $3,500 value of the automobile which, however acquired and used, is marital property. Plaintiff shall pay to defendant the sum of $980 representing that distributive share, within 30 days after entry of judgment herein.
The division of the furnishings should also take place in accordance with the ratio hereinbefore determined, i.e., plaintiff is entitled to 72% of the value thereof and defendant is entitled to 28% of the value thereof. However, the court was presented with no competent valuation of the individual items, no proof with respect to present saleability, and no statement as to which pieces either party would *408 want to specifically retain. Consequently, the court directs counsel for both parties to attempt an amicable division of these items or payment in lieu thereof, based upon the afore-stated ratio. Failing that, the court directs the parties’ attorneys to agree upon an appraiser, as they did with respect to the realty, who will appraise the furnishings. If, after obtaining an appraisal, the parties cannot agree on distribution or payment, they shall make further application to this court for relief.
The court determines that defendant is not entitled to any of the money contained in plaintiff’s thrift fund. The factual determination by the court as to contributions to the household did not take into account each party’s dealings with discretionary income. This was a separate category, treated separately by the parties. Moreover, the initial standard imposed by the court upon the fact pattern of this case, that neither party should derive undeserving economic advantage (with the unavoidable concomitant disadvantages to the other) just because of being married. Thus, for the same reason, the court determines that neither party would be entitled to the pension rights of the other, regardless of the nature of the pension plans or the present right to benefits -
To "the extent that there are other assets of the parties not dealt with by the court, they shall be divided in accordance with the 2% to 1 ratio previously promulgated.
Although a great portion of plaintiff’s posttrial brief has been devoted to the issue of fault as it affects distribution of marital property, the court has determined that fault is not a factor to be considered herein. Although this court agrees that fault may be considered (see Giannola v Giannola, 109 Misc 2d 985 [Munov, J.]) the facts and circumstances of this case obviate its consideration as a factor. This is because distribution of the assets can be made eqúitably without either party losing out economically. As a general rule, fault should not be used as a punishment but only as a consideration to tilt the balance where there are insufficient assets to make the parties economically “whole”. Additionally, whatever fault existed in this case was balanced against defendant’s waiver of maintenance.
*409 It is clear from the evidence that each party is capable of paying his/her counsel fees. Thus, there will be no court award of counsel fees.